## Rolla M. Treece, Appellee, v. Reinhart-Smith Grocer Company, Appellant.

### (Not to be reported in full.)

Appeal from the Circuit Court of Williamson county; the Hon. CARL E. SHELDON, Judge, presiding. Heard in this court at the March term, 1915. Reversed and remanded. Opinion filed December 1, 1915.

### Statement of the Case.

Action by Rolla M. Treece, plaintiff, against the Reinhart-Smith Grocer Company, defendant, in the Circuit Court of Williamson county, to recover both actual and punitive damages for a wrongful attachment of personal property alleged to have been caused by defendant. The action was tried by jury which found a verdict for plaintiff for $430. The court required a remittitur of $180. From a judgment for plaintiff for $250, defendant appeals.

It appeared that J. W. Bradley owned a grocery store in Herrin, Illinois, the stock being worth about $1500, and on February 8, 1913, traded it to Rolla M. Treece, defendant taking in exchange cash and a house and two lots of land. At that time Bradley was indebted to defendant in the sum of $475.94 for goods sold him. The trade was made on Saturday and defendant learned of the transfer by one of its salesmen. On the following Monday defendant sent W. E. Welge its credit man and treasurer from Marion, where it carried on a wholesale grocery store, to Herrin to try to collect the account. When Welge arrived at Herrin he found plaintiff in possession of the stock and that Bradley had gone. After talking with plaintiff, who had been a customer of defendant for a number of years, he returned to Marion. The next day he returned to Herrin in company with Walter W. Scaggs,

a young attorney who was occasionally employed by it to collect accounts but was not its general attorney. The two saw plaintiff at the store and the accounts do not agree as to what occurred. Plaintiff stated that Welge said to him, "I brought Mr. Scaggs with me, you can fix this matter up," and further said, "you can insure these accounts or agree to pay them, or see that they are paid and we won't attach them; if you do not, we will attach the goods and we will make what we can out of the goods"; that in the course of the conversation Scaggs said, "Rolla, you got yourself in bad; you have yourself in where you cannot pay out. If you keep out of the penitentiary you will do well." Welge and Scaggs denied making these statements and testified that they went there to find out about the trade and see if there was any way the account could be collected, but Scaggs admitted that he said, "surely this is not a fraudulent transaction; if it is, these goods are liable to attachment." Welge and Scaggs ascertained what Bradley had received, and plaintiff agreed to furnish them a description of the house and lots that evening. They also learned that Bradley had certain household goods in Herrin. They afterwards called on A. D. Morgan, an attorney, and then returned to Marion, where a writ of attachment was sworn out against Bradley by Welge, the papers being prepared by Scaggs. The writ was delivered that night to the office deputy sheriff by Scaggs, who instructed him to levy it on the household goods of J. W. Bradley. The office deputy delivered it to the sheriff, who sent it to A. Gasaway at Herrin, the deputy sheriff there. Next morning the sheriff went to Herrin and in company with Gasaway went to plaintiff's store about eight o'clock, levied on his stock, obtained the keys of the store from plaintiff, and locked it up after putting a notice of the levy on the door. The sheriff then returned to Marion and later saw Scaggs, and after talking to him, telephoned Gasaway to take down the

notice, release the goods and give up the keys. Gasaway accordingly took down the notice and attempted to deliver the keys, but found plaintiff had left the city and he was unable to deliver them until nearly noon the next day, when plaintiff returned. Plaintiff testified that during the time his store was closed, certain fruits and vegetables froze and the rats destroyed some meal by gnawing through the sacks containing it, and that his damages amounted to $30 or $40. The deputy sheriff testified that Scaggs called him up over the telephone the evening before the levy was made and told him to levy on the stock of goods; that the next morning Scaggs called him again and when informed the stock of goods had been levied upon, stated that was what he wanted done. On cross-examination, however, he stated that somebody called him up in the evening over the telephone, and he understood it was Mr. Scaggs and he assumed the second conversation was also with him. Scaggs testified he did not talk to the deputy sheriff either before or after the levy, until the afternoon of the day when the levy was made, and did not tell him before or after the levy that he wanted the stock levied on; that when he learned from the sheriff the levy had been made he ordered the goods released.

Defendant attempted to prove by Welge, Scaggs and Morgan that when they were in consultation in Morgan's office, Welge told Scaggs to have the writ of attachment levied on Bradley's household goods and not to levy on the stock, but the court refused to admit this testimony. Defendant also offered to prove by several witnesses that Welge had given Scaggs positive instructions immediately before the issuance of the attachment writ, to have the same levied on the household goods of Bradley and the court excluded this testimony.

DENISON & SPILLER, for appellant.

NEELY, GALLIMORE, COOK & POTTER, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

## Abstract of the Decision.

1. PRINCIPAL AND AGENT, § 149*—*when principal not liable for tortious act of agent.* If an agent commits a tort by an act in excess of his authority, the principal is not liable although the tortious act was done for the supposed benefit of the principal.

2. PRINCIPAL AND AGENT, § 151*—*when principal not liable for malicious prosecution of suit by agent.* Where an agent has authority to bring suit on behalf of a principal, the principal is not liable for the malicious act of the agent in setting in motion the criminal process of the State, where such principal could derive no benefit from the legitimate result of invoking criminal process.

3. ATTORNEY AND CLIENT, § 61*—*what attorney employed to sue and collect debt without express authority may do.* An attorney at law employed to sue for and collect a debt without express or specific authority cannot lawfully do more than to obtain judgment, order execution, receive and receipt for the money collected on such execution.

4. ATTORNEY AND CLIENT, § 83*—*when attorney may not compromise claim nor receive anything but money in satisfaction.* An attorney at law employed to sue for and collect a debt without express or specific authority cannot take less than the amount due in satisfaction of the debt, nor receive anything except money in satisfaction.

5. ATTORNEY AND CLIENT, § 61*—*implied authority of attorney.* An attorney at law has no implied authority.

6. ATTORNEY AND CLIENT, § 14*—*when client liable for acts of attorney in collecting debt.* A client who employs an attorney at law generally to collect a debt is bound to answer for the acts of the attorney which are necessary for the collection of such debts.

7. ATTORNEY AND CLIENT, § 14*—*when client not liable for wrongful acts of attorney in collecting debt.* A client who employs an attorney at law to collect a debt and gives such attorney specific instructions as to the acts to be done is not liable for the wrongful acts of such attorney in collecting such debt which are contrary to his instructions and are not necessary for such collection.

8. ATTORNEY AND CLIENT, § 14*—*when attorney personally liable for wrongful acts in collecting debt.* An attorney at law who is

employed to collect a debt and receives specific instructions as to the acts to be done is personally liable for any wrongful acts done contrary to such instructions or not necessary for the collection of such debt.

9. TRESPASS, § 48*—*when evidence as to instructions to attorney to attach goods other than those actually attached improperly excluded.* In an action of trespass to recover for injury sustained as a result of a wrongful attachment of plaintiff's personal property in a suit against a third person alleged by defendant to have conveyed such property to plaintiff fraudulently, where there was evidence that the officer making the attachment received telephonic instructions from one supposed to be defendant's attorney and which directed such officer to make the attachment in question, evidence that the attorney in question was specifically instructed by defendant to make an attachment of goods other than those actually attached *held* improperly excluded, such evidence being competent as tending to show the extent of the authority actually conferred on such attorney by defendant.

10. TRESPASS, § 58*—*when evidence that client instructed attorney to make attachment in different way competent on question of damages.* In an action of trespass to recover for injury sustained as the result of a wrongful attachment of plaintiff's personal property in an action against a third party, and where there was evidence that the attachment was made by direction of defendant's attorney, plaintiff claiming punitive as well as actual damages, evidence that defendant specifically instructed such attorney to make an attachment different from that actually made, *held* competent on the question of punitive damages.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.